IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

STEVEN ANTHONY CLEMENS,

    Petitioner,      No. CIV S-03-1006 LKK CMK P

vs.

SHASTA COUNTY SHERIFF'S OFFICE,

    Respondent.      FINDINGS AND RECOMMENDATIONS

                               /

        Petitioner is a state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

I.    Background

        Petitioner was a habitual drunk driver in Shasta County.[1] Petitioner was charged in counts 1 and 2 of driving under the influence of alcohol, driving on a suspended license, driving without a valid license, and refusing to submit to a chemical test, all stemming from a January 19, 2000 incident. Petitioner was charged in counts 3, 5,[2] and 6 of driving under the influence, driving on a suspended license, driving without a valid license, and refusing to submit

---

[1] A more detailed statement of facts is contained in the unpublished opinion of the Appellate Division of the Shasta County Superior Court, which is included in the documents lodged by respondent.

[2] Count 4 was removed from the complaint against petitioner. (CT 232-233.) The issue of petitioner's guilt on count four was never presented to the jury. (CT 274.)

to a chemical test, all stemming from a March 29, 1998 incident. Petitioner was charged in counts 7, 8 and 9 with driving under the influence, all stemming from a November 30, 1997 incident. Outside the presence of the jury, petitioner admitted to two prior driving under the influence convictions. Petitioner was convicted of all the above charges and a sentence was imposed.

II.     Standards for Granting Habeas Relief

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. See 28 U.S.C. § 2254(a). Federal habeas corpus relief also is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

See 28 U.S.C. § 2254(d) (referenced herein in as " § 2254(d)" or "AEDPA). See Ramirez v. Castro, 365 F.3d 755, 773-75 (9th Cir.2004) (Ninth Circuit affirmed lower court's grant of habeas relief under 28 U.S.C. § 2254 after determining that petitioner was in custody in violation of his Eighth Amendment rights and that § 2254(d) does not preclude relief); see also Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003) (Supreme Court found relief precluded under § 2254(d) and therefore did not address the merits of petitioner's Eighth Amendment claim). Courts are not required to address the merits of a particular claim, but may simply deny a habeas application on the ground that relief is precluded by 28 U.S.C. § 2254(d). See Lockyer, 538 U.S. at 71 (overruling Van Tran v. Lindsey, 212 F.3d 1143, 1154-55 (9th Cir.2000) in which the Ninth Circuit required district courts to review state court decisions for error before determining whether relief is precluded by § 2254(d)). It is the habeas petitioner's burden to show he is not precluded from obtaining relief by § 2254(d). See Woodford v. Visciotti, 537 U.S. 19, 25 (2002).

1    The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are
2 different. As the Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) ] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002). A state court does not apply a rule different from the law set forth in Supreme Court cases, or unreasonably apply such law, if the state court simply fails to cite or fails to indicate an awareness of federal law. See Early v. Packer, 537 U.S. 3, 8 (2002).

The court will look to the last reasoned state court decision in determining whether the law applied to a particular claim by the state courts was contrary to the law set forth in the cases of the United States Supreme Court or whether an unreasonable application of such law has occurred. See Avila v. Galaza, 297 F.3d 911, 918 (9th Cir.2002), cert. dismissed, 538 U.S. 919 (2003). Where the state court fails to give any reasoning whatsoever in support of the denial of a claim arising under Constitutional or federal law, the Ninth Circuit has held that this court must perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable. See Himes v. Thompson, 336 F.3d 848, 853 (9th Cir.2003). In other words, the court assumes the state court applied the correct law, and analyzes whether the decision of the state court was based on an objectively unreasonable application of that law. It is appropriate to look to lower federal court decisions to determine what law has been "clearly established" by the Supreme Court and the reasonableness of a particular application of that law. See Duhaime v. Ducharme, 200 F.3d 597, 598 (9th Cir.1999).

///

///

III.     Arguments and Analysis

    A.     Sixth Amendment Right to Confront (claims 1 and 2)

Petitioner alleges that his right to a fair trial was compromised because he was denied his constitutional right to confront and cross-examine two witnesses. The Confrontation Clause protects a defendant from unreliable hearsay evidence being presented against him during trial. See U.S. Constitution, Amendment VI.

As an initial matter, the court recognizes that the holding of Crawford v. Washington, 541 U.S. 36 (2004) is applicable in this case. Crawford states that out-of-court statements by witnesses not appearing at trial that are testimonial are barred under the Confrontation Clause unless the witnesses are unavailable and the defendants had a chance to cross examine, regardless of whether such statements are deemed reliable by the trial court. Crawford, 541 U.S. at 51. Although the holding of Crawford was not clearly established law at the time that the criminal proceedings in petitioner's case took place,[3] the Ninth Circuit held in Bockting v. Bayer, 399 F.3d 1010, as amended on denial of rehearing by 408 F.3d 1127 (9th Cir. 2005) that the Crawford decision should be applied retroactively on collateral review. Accordingly, the court recognizes that, under Bockting, extending the holding of Crawford to petitioner does not violate the nonretroactivity principle set forth in Teague v. Lane, 489 U.S. 288 (1989),[4] and applies Crawford in the instant case.

---

[3] Judgement against petitioner was entered in the Superior Court on July 19, 2001.

[4] The holding in Teague v. Lane, 489 U.S. 288 (1989) states that new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced unless they fall within two exceptions to the general rule. The two exceptions are if the new constitutional rule of criminal procedure would "place certain kinds of primary, private individual conduct beyond the power of criminal-law making authority..." or "require the observance of 'those procedures that...are 'implicit in the concept of ordered liberty.'" Teague 489 U.S. at 307; see also, Sawyer v. Smith, 497 U.S. 227, 242 (1990)(stating that rules are properly considered retroactive when they "alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding). In Bockting v. Bayer, 399 F.3d 1010 (9th Cir. 2005), the Ninth Circuit stated that Crawford was retroactive because it altered the understanding of the bedrock procedural elements essential to the fairness of a proceeding. See id. at 1019-20.

4

1. <u>Cross-Examination of Alleged Hit and Run Victim</u>

Petitioner claims that his trial was constitutionally tainted because he was not afforded the opportunity to cross-examine Mr. Hermann, an alleged hit and run victim. During opening argument, the prosecutor described the underlying facts of petitioner's March 28, 1998 driving under the influence charges. The prosecutor explained that the officer was responding to a report of a hit and run on I-5, and the officer located petitioner's car, which matched the hit and run vehicle's description. During trial, the officer testified that, just after he contacted petitioner in a convenience store parking lot on the night of March 28, 1998, Mr. Hermann approached the officer and stated that petitioner's vehicle was the one which ran him off the road. (RT 418.) Just prior to the officer's testimony, the trial judge ruled that Mr. Hermann's testimony was admissible, over a hearsay objection, as a spontaneous statement.

Petitioner presented this claim to the California Supreme Court, which denied the claim without comment. (Answer, Ex. C.)

As noted above, the court considers whether petitioner's right to confrontation was violated under a <u>Crawford</u> analysis. While the Court in <u>Crawford</u> "le[ft] for another day any effort to spell out a comprehensive definition of 'testimonial,' " the Court provided some guidance for ascertaining whether evidence is testimonial. <u>Crawford</u>, 541 U.S. at 68. Of significance here, the Court observed that "[a]n accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." <u>Id</u>. at 51. Accordingly, the court must find, under <u>Crawford</u>, that Mr. Hermann's assertion to the officer, that petitioner was the reckless driver who ran him off the road, was testimonial. <u>See</u> <u>e.g.</u>, <u>Davis v. Washington</u>, ___U.S.___ 126 S.Ct. 2266 (2006)( law enforcement interrogations directed at establishing the facts of a past crime or in order to identify the perpetrator are testimonial).

///

///

      Although Mr. Hermann's statement was testimonial, the undersigned finds that it's admission did not violate petitioner's constitutional rights under the Confrontation Clause. Petitioner was not charged with a hit and run offense.  Instead, the issue being tried was whether petitioner was driving under the influence and driving without a valid driver's license.  An officer testified that he determined that plaintiff had been driving under the influence by objective symptoms observed while talking to petitioner, performance of the field sobriety tests and information that petitioner had been driving his vehicle.  (RT 382.)  The officer testified that he did not base his opinion on any information that petitioner had previously been driving on I-5. (RT 381.)   The officer observed that petitioner's speech was slow and deliberate and that he occasionally slurred words when speaking.  (RT 372-378, 379.) The gaze nystagmus test was administered and a lack of smooth pursuit was noted at the extremes. (RT 374.) Petitioner did not perform the hand pat test as directed.  (RT 375-377) The test requires the performance of two functions at once, which bears on the question of whether the person given the test is under the influence.  (RT 375-376.)  The officer did two things at once—counting and tapping, and directed petitioner to do the same.  (RT 376.)  Petitioner was unable to perform as demonstrated, despite repeated explanations and eventually declined to take the test again.  (RT 377.)

      A second officer testified that, as he was driving, he observed a silver Mercedes on the public roadway, stopped at a red light.  (RT 405).  The officer observed that the driver of the Mercedes looked like the individual described by the police dispatcher to have been involved in a hit and run accident. (RT 405.) The officer made a U-turn, and, as he did so, he observed petitioner driving into the parking lot of an AM PM convenience store.  (RT 406.)  The officer pulled in behind petitioner's car and then approached petitioner.  (RT 406.)  The officer testified that he determined that petitioner smelled of alcohol and that petitioner was using a "homemade identification card," which petitioner insisted was his license.  (RT 406-407.)

///

///

During the officer's conversation with petitioner, the officer was distracted by a voice behind him, which was determined to be Mr. Hermann, yelling "[t]hat's the vehicle that ran me off the road." (RT 408, 414.) However, as described above, it was not determined that petitioner was driving under the influence and without a valid license by Mr. Hermann's testimony. (RT 382.) Instead, the testimony of the two officers that petitioner had failed field sobriety tests and that petitioner had been observed driving on the roadway and turning into the AM PM established that petitioner was driving under the influence of alcohol. Mr. Hermann's call to the police dispatcher regarding a hit and run accident provided a basis for stopping petitioner; however, petitioner makes no argument regarding whether his stop was permissible. Mr. Hermann's statement did not have a substantial and injurious effect of influence in determining the jury's verdict on the charges against petitioner. See Brecht v. Abrahamson, 507 U.S. 619, 639 (1993).

Accordingly, the court concludes that, under the holding announced in Crawford, petitioner's right to confront and cross examine witnesses against him was not violated by the trial court allowing the officer to testify to Mr. Hermann's statement. Indeed, petitioner was provided an opportunity to cross-examine officer Comer who was the officer that observed plaintiff driving on the roadway and turning into the AM PM. The court finds that the state court's rejection of petitioner's claim that the trial court erred in admitting the statement was neither contrary to nor an unreasonable application of controlling principles of federal law. The court recommends that petitioner's first claim for relief be denied.

        2.     <u>Cross-Examination of One-Armed Passenger</u>

Petitioner next claims that he was denied his constitutional right to confrontation and cross-examination when he was denied the right to cross-examine the one armed passenger riding in his car during the November 1997 stop. The trial court permitted a police officer to testify that a passenger in petitioner's vehicle on the November 1997 stop fit the description of a person wanted for armed robbery, that the person was of African Heritage and that he had only

7

one arm. (RT 256-57.) Petitioner appears to argue that, because the officer testified to this information about the passenger in petitioner's car, it violated petitioner's right to confrontation when the prosecutor failed to call this passenger as a witness. Petitioner presented this claim to the California Supreme Court, which denied the claim without comment. (Answer, Ex. C.)

The Confrontation Clause protects a defendant from unreliable hearsay evidence being presented against him during trial. See U.S. Constitution, Amendment VI; White v. Illinois, 502 U.S. 346, 354 (1992). Here, however, petitioner points to no hearsay statement of the one-armed passenger and the record indicates that no statement by the one-armed passenger was admitted into evidence. Accordingly, the petitioner cannot demonstrate that his constitutional right to confront this witness to adduce the reliability of his statement was violated. The court finds that the state court's rejection of this claim was neither contrary to nor an unreasonable application of controlling principles of federal law. The court recommends that petitioner's second claim for relief be denied.

B.   Sixth Amendment Fair Cross Section Requirement

Petitioner asserts that his trial was constitutionally deficient because he was deprived of a jury drawn from a cross section of his community. Specifically, petitioner asserts that he is an African-American and that no one on his jury venire was African-American. Petitioner presented this claim to the California Supreme Court, which denied it without a reasoned decision. (Answer, Ex. C)

A criminal defendant has a constitutional right stemming from the Sixth Amendment to a fair and impartial jury pool composed of a cross section of the community. See Taylor v. Louisiana, 419 U.S. 522, 538 (1975); Duncan v. Louisiana, 391 U.S. 145,(1968). The

///
///
///
///

Supreme Court employs a three part test to establish a primae facie violation fo the Sixth Amendment's cross section requirement:

> (1) that the group alleged to be excluded is a distinctive group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this under representation is due to systematic exclusion fo the group in the jury-selection process.

Duren v. Missouri, 439 U.S. 357, 364 (1979). If petitioner makes a primae facie showing under Duren, then the burden shifts to respondent to justify the infringement by showing that attainment of a fair cross section is incompatible with a significant state interest. See id. at 367-68.

It is established that African-Americans are a distinct group for purposes of Sixth Amendment analysis; therefore, the first Duren prong is satisfied.

The court next considers whether petitioner has shown that the representation of African-Americans in Shasta County venires from which juries were selected was not fair and reasonable in relation to the number of African-Americans in Shasta County. Duren, 439 U.S. at 364; Thomas v. Borg, 159 F.3d 1147, 1150 (9th Cir. 1998). The Ninth Circuit uses an absolute disparity test to determine under representation of particular groups in jury venires. See Thomas, 159 F.3d at 1150. The absolute disparity test "measures representation by the absolute disparity between the proportion of the group in the community and the proportion represented on the master jury wheel." United States v. Nelson, 137 F.3d 1094, 1101 (9th Cir. 1998). The Ninth Circuit has "consistently held that absolute disparities below 7.7% are insubstantial and constitutionally permissible." United States v. Cannady, 54 F.3d 544, 548 (9th Cir.1995).

Here, petitioner has failed to proffer any evidence that there were no African-Americans in his jury venire. Petitioner has failed to identify either the proportion of African-Americans in Shasta County or the proportion of African-Americans on the master jury wheel. See e.g., United States v. Esquivel, 88 F.3d 722 (9th Cir.1996) (The second prong of the Duren test requires proof, typically statistical data, that the jury pool does not adequately represent the distinctive group in relation to the number of such persons in the community). Having presented

1  no statistical evidence of a disparity, petitioner has failed to sustain his burden under
2  Duren's second prong.
3  Petitioner's claim must also fail because he has failed to identify any jury selection
4  criteria used in Shasta County which was not neutral with respect to race, which is required by
5  Duren's third prong.
6  Accordingly, the court finds that the California Supreme Court's determination that
7  petitioner had failed to establish a Sixth Circuit cross-section jury claim was neither contrary to
8  nor an unreasonable determination of federal law. The court recommends that this claim be
9  denied.
10      C.    Excessive Sentence
11  Petitioner's next claim is that his sentence was unconstitutionally excessive and
12  that it violated the Equal Protection Clause of the Fourteenth Amendment. Specifically, petitioner
13  claims that he should have been sentenced to 120 days instead of the nearly two year sentence
14  which he received. This claim was presented to the California Supreme Court, which denied it
15  without a reasoned decision. (Answer, Ex. C.)
16  Petitioner's claim is essentially a challenge to the state court's interpretation of a
17  state sentencing law. As set forth above, a writ of habeas corpus is not available for alleged error
18  in the interpretation or application of state law, unless the error resulted in a complete miscarriage
19  of justice. See Hill v. United States, 368 U.S. at 428; Middleton v. Cupp, 768 F.2d 1083, 1085
20  (9th Cir. 1985);
21  The Ninth Circuit has specifically refused to consider state law errors in the
22  application of state sentencing law. See, e.g., Miller v. Vasquez, 868 F.2d 1116 (9th Cir. 1989).
23  In Miller, the Ninth Circuit refused to examine the state court's determination that a defendant's
24  prior conviction was for a "serious felony" within the meaning of the state statutes governing
25  sentence enhancements. Id. at 1118- 1119. The court did not reach the merits of the Miller
26  ///

1  petitioner's claim, stating that federal habeas relief is not available for alleged errors in
2  interpreting and applying state law. See Id. (quoting Middleton v. Cupp, 768 F.2d at 1085).

3  In Estelle v. McGuire, 502 U.S. 62 (1991), the Supreme Court reiterated the
4  standards of review for a federal habeas court.  It held that "it is not the province of a federal
5  habeas court to reexamine state court determinations on state law questions." Id. at 67-68.  The
6  court re-emphasized that "federal habeas corpus relief does not lie for error in state law." Id. at
7  67, citing Lewis v. Jeffers, 497 U.S. 764 (1990), and Pulley v. Harris, 465 U.S. 37, 41 (1984).
8  The court further noted that the standard of review for a federal habeas court "is limited to
9  deciding whether a conviction violated the Constitution, laws, or treaties of the United States
10 (citations omitted)." Estelle, 502 U.S. at 68.  In Pulley, the Supreme Court stated that in order for
11 error in the state trial proceedings to reach the level of a due process violation, the error had to be
12 one involving "fundamental fairness," Id. at 482, and that "we 'have defined the category of
13 infractions that violate 'fundamental fairness' very narrowly.'" Id.  Further, "a sentence within
14 the limits set by a valid statute may not be overturned on appeal as cruel and unusual punishment
15 unless the sentence is so 'grossly out of proportion to the severity of the crime' as to shock our
16 sense of justice." United States v. Cupa-Guillen, 34 F.3d 860, 864 (9th Cir. 1994)

17  This court will not disturb the decision of the state court on this state law issue.
18 Even assuming that the trial court erred in sentencing, the error did not result in a "complete
19 miscarriage of justice" or render the state proceedings fundamentally unfair.  Accordingly, the
20 court recommends that this claim be denied.

21  D.  Denial of Due Process

22  Petitioner argues that he was denied due process by virtue of a the Hon. Gregory
23 Caskey participating both in a settlement conference prior to petitioner's trial and on the appellate
24 trial which affirmed petitioner's conviction.  This claim was presented to the California Supreme
25 Court, which denied it without a reasoned decision. (Answer, Ex. C.)
26 ///

A fair trial in a fair tribunal is a basic requirement of due process.  See Withrow v. Larkin, 421 U.S. 35, 46 (1975).  "A biased decision maker is constitutionally unacceptable, and our system of law has always endeavored to prevent even the probability of unfairness."  See In re Murchison, 349 U.S. 133, 136 (1955).  In furtherance of this goal, it is generally recognized that no judge may try a case where he or she has an interest in its outcome.  See id.  "Such an interest cannot  be defined with precision. Circumstances and relationships must be considered."  Id.

Here, Judge Caskey presided over a settlement conference in petitioner's case in which petitioner was offered a sentence of one year for all the counts against him.  Judge Caskey did not preside over petitioner's trial.  Petitioner has not described how Judge Caskey presiding over a plea negotiation would have given the Judge any interest in the outcome of the case.  Although the court can easily see that instances such as conducting a grand jury investigation and then presiding over a trial or conducting a trial and then sitting on the appellate panel would give a judge an interest in the outcome of a case, the court cannot find that presiding over a plea negotiation gave Judge Caskey any interest in the outcome of petitioner's case.   Accordingly, the court finds that this claim does not provide a basis for habeas relief and recommends that this claim be denied.

  E.  Speedy Trial Violation

Petitioner's final claim is that he was denied his right to a speedy trial.  The Sixth Amendment guarantees that all criminal defendants shall enjoy the right to a speedy trial.  The Supreme Court has limited the broad scope of the speedy trial guarantee with four separate inquiries: (1) whether the delay before trial was uncommonly long; (2) whether the government or the criminal defendant is more to blame for that delay; (3) whether, in due course, the defendant asserted his right to a speedy trial; and (4) whether prejudice resulted from the delay.  See Doggett v. United States, 505 U.S. 647, 651 (1992).

Here, petitioner was arraigned on the November 1997 offense on January 13, 1998, and trial on the three consolidated offenses commenced on July 3, 2001.  This is a delay of more

than one year; accordingly, under Doggett, the delay in petitioner's trial exceeded the threshold beyond which a court will presume prejudice to the defendant.  See Doggett, 505 U.S. at 652 n.1 (delay is presumably prejudicial when it approaches one year).

The court must next consider who is more to blame for the delay; the petitioner or the state.  See id. at 651.  The record reveals that petitioner asked for sixteen separate continuances, including two written motions and generally waived time with each of his requests.  (Supplemental Answer, Exs. A-1 and B-1; CT 17-23, 28, 73-78, 101, 106, 112-119, 123, 129, 134.)  The state objected to several of petitioner's motions to continue his trial.  Finally, petitioner has not shown that he was prejudiced by the delay in his trial.  Accordingly, the court finds that petitioner's speedy trial claim does not provide grounds for habeas relief and recommends that this claim be denied.

IV.   Conclusion

In accordance with the above, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within ten days after being served with these findings and recommendations, petitioner may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Petitioner is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  See  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  August 22, 2006.

CRAIG M. KELLISON
UNITED STATES MAGISTRATE JUDGE